Caruthers, J.,
delivered the opinion of the Court.
Matthew Robinson made his will, and died in 1831 or 32. The complainant is one of his sons, and James Robinson, deceased, the testator of defendant, Denson, his brother. Matthew had a number of children, and but a small estate. When engaged in making his will, near the time of his death, it seems to have been his purpose to divide his property equally among his children, when James Robinson, his brother, who then had no children of his own, said to him that he need not give his son James W. anything, as he would do as much *396 for him as he (Matthew) could do for any of his other children. Whereupon he made no provision for him. James Robinson married again, and recently died leaving issue, to whom he gave all his property, and nothing to complainant.
This bill was filed to make the estate of his uncle liable for the amount complainant would have received of his father’s estate, but for his assurance that he should be made equal with the other children, and also to recover for valuable services rendered in the business of his uncle, and articles furnished him upon the same expectation, excited by repeated promises, to the effect that all he had was intended for him at his death. All legal defences are relied upon in the answer including the statute of limitations.
James Robinson died in 1858, leaving all of his property, by will, to others. The complainant was raised by his uncle from early infancy, as one of his family, and, as such, aided in his business. But as to all the claims now set up, after a lapse of more than a quarter of a century, there can be no doubt as to the bar of the statute of limitations, unless an express trust can be raised.
Upon the merits, it may be remarked that it is most probable from the proof, which is not however very explicit and satisfactory, that the uncle gave him much more in his lifetime than his equal share in his father’s estate would have been. There can be no pretence but that the uncle’s promise was made in good faith, and that it was no part of his purpose to injure his favorite nephew.
What would be the effect of a fraudulent promise of this description, by which an injury or loss resulted, need not now be considered; nor need we stop to inquire whether legal redress might not have been obtained at the proper time for the breach of the uncle’s undertaking. The simple question now' is, whether a trust was raised against the uncle in favor of his nephew which -would continue until his death, and be then capable of enforcement by bill in equity.
We have recently held at Jackson, upon much consideration, in a contest between McClellan’s heirs, and the heirs of *397 his widow, that a promise by the latter that she would divide the estate equally between his relations and her own, if he left the whole to her; and in consequence of that promise and understanding, the will was so made; a trust was created in favor of the testator’s family to the extent of one-half his estate, which a Court of Equity would enforce. 2 Head, 684. But there a benefit was derived from the promise. It was made by a legatee. It caused the will to be made as it was. The trust is based upon a consideration in such a case.
The complainant relies upon two cases in our own reports, and cites no other authority. The first is the case of McCarty v. Blevins, 5 Yer., 195. The principle there adopted is that where two persons made a valid contract for the benefit of a third, the latter may sue upon it and recover. If that has any application at all to this case, it would only authorize an action upon such contract, if any existed in law, and not raise a trust. The other case- is that of Richardson v. Adams & Wife, 10 Yer., 277-9. This is the case of a legatee who prevented the testator from changing his will so as to provide for the surrender to his father of a note held upon him, and which was embraced in the general bequest to his wife, by a promise on her part to do with the note as he requested. But she married again, and recovered judgment on the note. She was compelled to perform the trust, and the judgment was perpetually enjoined and the note cancelled.
The case of Wickett & Wife v. Roby, 3 Brown’s Par. Cases, 16, is one of the same character, and so is the case in 11 Ves., 638, 3 Atkins, 539, and 2 Vernon, 295. In all these cases, the promises upon which the trusts were raised were made by a person deriving a benefit under the will. We are not aware of any case or authority where a similar charge was imposed upon one, who takes no benefit under the will, by a Court of Equity. We think, therefore, that the complainant in this case has no remedy. We are the less reluctant to arrive at this conclusion against the apparent justice of the case, because we are strongly inclined to believe, from the *398 proof, that the complainant has been more- than compensated for any loss sustained in his father’s estate by gifts made to him by his uncle in his lifetime.
The decree will be affirmed with costs.